## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Criminal No.** _____ |
| | : | |
| | : | |
| **v.** | : | **Violations:** |
| | : | |
| | : | **18 U.S.C. § 1343 (Wire Fraud)** |
| | : | |
| **EBONEE C. PRICE,** | : | **22 D.C. Code § 1805a (Conspiracy)** |
| | : | |
| | : | **22 D.C. Code §§ 3221(a), 3222(a)(2)** |
| **Defendant.** | : | **(First Degree (misd.) Fraud)** |

## I N F O R M A T I O N

The United States Attorney charges that:

### Background

1.     At all relevant times, Ebonee C. Price (the "Defendant") was a resident of Washington, D.C.  The Defendant was employed by the D.C. Government from on or before July 9, 2011, to on or after January 28, 2012.  The Defendant's paychecks from the D.C. Government during that time period were sent to the Defendant's bank account via electronic direct-deposit.

2.     From on or before January 1, 2003, to the present, Michael Lawrence Rosebar ("Rosebar") operated a home-improvement and heating, ventilation, and air-conditioning ("HVAC") contracting business under various names known to the government (hereafter referred to as "EMR Construction").  From on or before January 1, 2007, and continuing to the present, neither Rosebar nor EMR Construction was licensed in Washington, D.C. to do home-improvement or HVAC work.

3.     From on or before November 1, 2008, to on or after March 1, 2016, the Defendant and Rosebar were in a personal relationship.  During that time, Rosebar regularly paid for the Defendant's cell phone, provided the Defendant with numerous meals, provided the Defendant with clothing and other personal items, took the Defendant on multiple trips, and paid for services for the Defendant, such as regular salon appointments.  From in or before 2011 to in or about 2014, the Defendant lived free of charge at a home in Washington, D.C. owned by Rosebar.

4.     At all relevant times, Rosebar was married to an individual known to the government.  Rosebar's wife participated in the operation of EMR Construction by preparing and negotiating contracts, receiving payments from customers, and speaking to customers.

5.     Person A is a daughter of Rosebar.  From time to time, Person A assisted Rosebar with matters relating to EMR Construction.  At all relevant times, Person A had a Bank of America (BOA) business account, account number ending in XXXXXX4294 ("Person A's BOA Account").

6.     From on or about March 1, 2013, to on or about September 5, 2013, a real estate company based in San Clemente, CA (Customer B), was a customer of Rosebar and EMR Construction.  One of the projects Customer B hired EMR Construction to complete was a substantial HVAC job at an apartment building in Atlanta, GA (Project 2).  The building involved in Project 2 had 212 units, and Project 2 involved HVAC work with regard to 70 of those units.

## COUNT 1 – WIRE FRAUD

7.     Paragraphs 1 through 6 of this Information are realleged and incorporated by reference as if set out in full.

2

8.     From on or before July 24, 2013, to on or about September 5, 2013, the exact dates being known and unknown to government, in the District of Columbia and elsewhere, the Defendant, Rosebar, Rosebar's wife, Person A, and others known and unknown to the government, knowingly and willfully devised a scheme to defraud Customer B, and to obtain money and property of Customer B by means of materially false and fraudulent pretenses, representations, and promises.  On July 26, 2013, in the District of Columbia and elsewhere, for the purpose of executing the aforementioned scheme and artifice and attempting to do so, the Defendant and Rosebar together transmitted in interstate commerce a false and misleading text message from Defendant's cell phone in Washington, D.C. to a cell phone of Customer B's representative in California.

**(Wire Fraud, in violation of Title 18, United States Code, Section 1343)**

## COUNT TWO – FIRST DEGREE FRAUD

9.     Paragraphs 1 through 6 of this Information are realleged and incorporated by reference as if set out in full.

10.     Commencing on or about July 9, 2011, and continuing thereafter to on or about January 28, 2012, within the District of Columbia, the Defendant engaged in a scheme and systematic course of conduct with intent to defraud and to obtain property of the D.C. Department of Employment Services (DOES) by means of false or fraudulent pretense, representation, and promise and thereby obtained property that had some value or caused the loss of property of that had some value belonging to DOES, consisting of money.

**(First Degree Misdemeanor Fraud, in violation of 22 D.C. Code,
Sections 3221(a), 3222(a)(2) (2001 ed.))**

## COUNT THREE – CONSPIRACY TO COMMIT FIRST DEGREE FRAUD

### The Conspiracy and Its Objects

11.     From at least on or about March 1, 2013, through in or around September 2013, within the District of Columbia and elsewhere, the Defendant, Rosebar, Rosebar's wife, Person A, and other persons whose identities are both known and unknown to the government, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed with one another and with others to defraud Customer B, that is, to knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing they were false and fraudulent when made, for the purpose of executing such scheme and artifice and attempting to do so, did obtain property of some value belonging to Customer B, consisting of money and salvage materials, in violation of 22 D.C. Code, Sections 3221(a) and 3222(a)(2).

### Goal of the Conspiracy

12.     The goal of the conspiracy was for Defendant, Rosebar, Rosebar's wife, Person A, and others to enrich themselves by engaging in a conspiracy and a scheme to defraud in which they obtained funds from Customer B by means of false and fraudulent pretenses, representations, and promises.

### Manner and Means of the Conspiracy

13.     It was part of the conspiracy that Rosebar and Rosebar's wife knowingly, and with intent to defraud, devised and intended to devise a scheme to defraud home-improvement and HVAC customers, including Customer B, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

14.     Rosebar located potential EMR Construction customers by meeting people at home-improvement retail stores, by referral from other known and unknown individuals, and by becoming a sub-contractor on jobs.

15.     Rosebar told potential EMR Construction customers, including Customer B, that Rosebar was a licensed home improvement contractor, which was false.

16.     Rosebar and Rosebar's wife negotiated contracts with customers, including Customer B, for large-scale home-improvement or HVAC projects, that Rosebar and Rosebar's wife did not intend to, and could not, perform.

17.     Rosebar and Rosebar's wife required an initial payment, or "draw," prior to starting work on a particular job, including Project 2.

18.     Rosebar hired unskilled day-laborers or family members to work on jobs, including Project 2.

19.     Rosebar and the workers he hired would start jobs, including Project 2, by doing demolition work and removing items such as boilers, furnaces, air-conditioning units, and other property.

20.     Rosebar and the workers he hired did not perform the work promised to EMR Construction customers, and instead they abandoned job-sites after doing minimal or otherwise insufficient work.

21.     When customers, including Customer B, made inquiries to Rosebar about finishing jobs, Rosebar, Rosebar's wife, and the Defendant made false representations and promises to customers regarding the status of the work or the reasons for the delays, and simultaneously requested further payments from customers.

22.     When customers, including Customer B, made additional payments, Rosebar would not return to the job, citing various family or personal reasons, or blaming the customer for not paying enough money.

23.     Rosebar, Rosebar's wife, and Person A would receive payments from EMR Construction customers, including Customer B, convert those payments to cash, and use the payments for personal expenses, rather than for use in completing jobs, including Project 2.

### Overt Acts

24.     In furtherance of the conspiracy, and in order to effect the objects thereof, the Defendant, Rosebar, Rosebar's wife, Person A, and other persons whose identities are both known and unknown to the government, alone and in various combinations, in the District of Columbia and elsewhere, directly and indirectly, committed overt acts including, but not limited to, the following:

   a. In or around May 2013, Rosebar's wife negotiated a contract with Customer B for Project 2.

   b. In May 2013, Rosebar and Rosebar's wife caused Customer B to wire a total of $39,000 to Person A's BOA Account in connection with Project 2.

   c. In or around May 2013 the Defendant reserved roundtrip train tickets for Rosebar and another known individual to travel to Atlanta for Project 2. The duration of the trip was approximately three days, which was not enough time to complete Project 2.

   d. Rosebar traveled with the other known individual to the Project 2 site, performed demolition work by removing HVAC units, and then returned to Washington, D.C.

e.  When Customer B's representative began to inquire where the Project 2 HVAC units were and where Rosebar was, the Defendant called Customer B's representative and falsely stated that she worked in customer service at the national HVAC supply company from which Rosebar had purportedly ordered the HVAC units.

f.  Rosebar and the Defendant then assured Customer B's representative that the HVAC units were ordered.  In reliance on this information, on or about July 17, 2013, Customer B wired another $19,800 to Person A's BOA Account.

g.  In July and August 2013, the Defendant agreed with Rosebar that the Defendant would send text messages to Customer B's representative, falsely stating that the Defendant worked for a national HVAC supply company, and that she was in possession of information showing that Rosebar had ordered HVAC units for Project 2.  The Defendant sent such text messages, with assistance from Rosebar, from the Defendant's cell phone.  In reality, no HVAC units were ever delivered with respect to Rosebar's work on Project 2.

h.  Records from the national HVAC supply company the Defendant falsely claimed to work for show that Rosebar did not order HVAC units from that supply company in connection with Project 2.

i.  Rosebar failed to complete any work at Project 2 beyond initial demolition.

**(Conspiracy to Commit First Degree Misdemeanor Fraud, in violation of 22 D.C. Code, Sections 1805a, 3221(a), 3222(a)(2) (2001 ed.))**

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY
D.C. Bar No. 415793

By: _____

JOHN MARSTON
Bar No. DC - 493012
Assistant United States Attorney
Fraud & Public Corruption Section
555 4th Street, N.W., Room 5227
Washington, DC 20530
202-252-7762